UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
IN RE WORLDCOM, INC. SECURITIES           :       MASTER FILE
LITIGATION                                :       02 Civ. 3288 (DLC)
                                          :
This Document Relates to:                 :
----------------------------------------- X
                                          :
                                          :       MEMORANDUM OPINION
ELIZABETH H. RICH and DONALD RICH,        :           AND ORDER
                                          :
            Plaintiffs,                   :
                                          :
        -v-                               :
                                          :
SALOMON SMITH BARNEY, INC., et al.,       :       05 Civ. 3913 (DLC)
                                          :
            Defendants.                   :
                                          :
----------------------------------------- X

DENISE COTE, District Judge:

   Philip L. Spartis ("Spartis") and Amy J. Elias ("Elias") have moved to vacate an arbitration award entered in an arbitration begun by Elizabeth and Donald Rich ("Riches") against Spartis, Elias, W. David Hobby, Michael J. Grace and Salomon Smith Barney, Inc. ("Salomon"). For the following reasons, the motion is granted in part.

Background

   The Riches are members of the class that brought federal securities law claims in connection with the securities of WorldCom, Inc. ("WorldCom"). Ms. Rich was a WorldCom employee who, beginning in 1998, exercised her WorldCom stock options through Salomon's Atlanta office pursuant to an arrangement with WorldCom established by Spartis, who worked at Salomon. The

Riches did not opt out of the WorldCom class action[1] and are therefore bound by the releases entered in connection with the settlement of that litigation, including releases of claims against the Citigroup Defendants, which includes Salomon and their employees.  See In re WorldCom, Inc. Sec. Litig., 02 Civ. 3288 (DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004).

The Riches initiated an NASD arbitration in Kentucky on June 21, 2002, seeking damages of $1,312,141.08 for losses realized investing in WorldCom and other securities.  Their claim focuses almost exclusively on their WorldCom holdings.  In the introduction to the claim they explain that due to unsuitable investment advice given to them by Spartis and Elias, who worked at Salomon with Spartis, Ms. Rich exercised her WorldCom employee stock options, using money borrowed from Salomon, and held them.  The Riches asserted that, but for that advice, the Riches "would never have" borrowed on margin and would have diversified their holdings.  The claim describes in detail the WorldCom transactions in which the Riches engaged.  The claim adds that the respondents knew that the Riches were not sophisticated investors, and nonetheless encouraged the Riches to take on margin risk and to over-concentrate in WorldCom stock and later in Sprint stock.  This single reference to Sprint stock is the only reference to another stock in the claim.  The claim asserted

---

[1] The opt out period in the WorldCom class action closed on September 1, 2004.

that Salomon had fired Spartis and Elias and that the two former employees are engaged in litigation with Salomon.

On the last day of the arbitration hearing, December 14, 2004, when the panel was advised that the claims administrator in the WorldCom class action had no record that the Riches had opted out of the class action, the panel stated that it would issue a decision on the arbitration on the assumption that it could be voided by this Court on the respondents' application if it were confirmed that the Riches had not opted out. The panel's chairman suggested that the panel might issue two rulings, one covering all of the claims and one covering everything except WorldCom. Despite being pressed repeatedly to inquire of the Riches' counsel whether the Riches had opted out of the class action, the panel declined to do so. The panel reasoned that whatever representation they were given on the matter, they were not in a position to decide whether the Riches had failed to opt out. "Regardless of her answer to that question, we're still going to render our decision, and – because I don't think we are prepared to decide if she has not opted out of that class action. We can[2] just say we're going to wipe this out and not have a decision."

The parties' summation arguments focused exclusively on the purported advice given by Spartis and Elias to Ms. Rich to exercise WorldCom options and to hold them. The respondents argued essentially that the Riches were sophisticated investors

---

[2]The arbitrator may have intended to say, "we can't just say we're going to wipe this out and not have a decision." (Emphasis supplied).

who made their own decisions, engaged in intricate trading strategies, had made a lot of money by holding WorldCom stock as the stock appreciated, and decided to hold it even as its price plummeted. The document on which the Riches placed the most emphasis was a document from Salomon recommending a WorldCom investment strategy. No other stock was mentioned during summations except for the following reference to Sprint. Counsel for Elias and Spartis argued that the evidence showed that the Riches loved investing in the telecommunications sector, noting that the Riches had not presented any evidence that the respondents recommended investing in Sprint, a stock on which the Riches lost $400,000.

On January 20, 2005, the panel awarded the Riches $315,000 in compensatory damages,[3] $63,000 in pre-judgment interest, $50,000 in attorney's fees, and $20,000 in costs, jointly and severally against Spartis, Elias, and Salomon. The award had an extended procedural history and a one page case summary, but did not otherwise explain the basis for its ruling. The only security identified in the case summary was WorldCom. The case summary stated in pertinent part:

---

[3] The Riches' expert report calculated the Riches' out of pocket damages as including losses of $605,723 on WorldCom and $335,839 on Sprint. The next largest loss in a single security was $49,120.

4

> Claimants asserted the following causes of action: lack of suitability; lack of supervision; dishonest and unethical practice; breach of fiduciary duty; negligence and gross negligence. Claimants alleged that Respondents gave them <u>unsuitable investment advice to purchase WorldCom stock</u> by means of a margin account with money borrowed from Salomon Smithy [sic] Barney, Inc. Claimant also alleged that Respondents <u>never discussed the risks associated with the holding of the WorldCom shares</u>.

(Emphasis supplied). The case summary continued with a description of the answers, affirmative defenses, third-party claims and cross-claims of the respondents. This description included the following:

> In their Third-Party claim, Third-Party Claimants, Philip L. Spartis and Amy J. Elias, asserted that Grubman[4] failed to disclose, to either the Claimants or Mr. Spartis and Ms. Elias, the serious conflict of interest he had between his duty to <u>publish objective WorldCom research reports</u> and his heavy incentives to help SSB [Salomon] secure investment banking business.
> In their Cross-Claim, Cross-Claim Claimants, Philip L. Spartis and Amy J. Elias, asserted that SSB failed to adequately supervise Grubman and insure that his <u>WorldCom research reports</u> were in compliance with legal and regulatory standards, in violation of NASD Rule 3010.

(Emphasis supplied). The award "denied and dismissed in its entirety with prejudice" the cross-claim filed by Spartis and Elias seeking indemnification from Salomon. No security other than WorldCom was mentioned in the award.

On March 3, 2005, and with their consent, the Riches were enjoined by this Court from enforcing the award insofar as it related to their WorldCom holdings. The order entered that day permitted the NASD Panel to clarify whether any of the award related to claims other than those based on the Riches' holdings in WorldCom securities. On March 15, the NASD panel declined to

---

[4] Grubman was Salomon's telecommunications analyst.

clarify its award. On April 12, 2005, the District Court in Kentucky transferred to this Court the action which had been filed by the Riches seeking confirmation of the January 20 award.

Discussion

Spartis and Elias argue that the NASD panel exceeded its authority in issuing the award since it lacked the authority to conduct its hearing and to issue an award related to the Riches' holdings in WorldCom after it learned that the Riches had released their claims against the respondents in the arbitration. They seek an order vacating the entire award, including the dismissal with prejudice of their cross-claim against Salomon. Salomon argues that the award should be vacated to the extent it grants damages to the Riches, but that the dismissal of the cross-claim filed against Salomon should not be vacated. The Riches ask for confirmation of the award in its entirety, arguing that it is possible that the award could have been based on losses they suffered due to trading in securities other than WorldCom stock.

While an arbitration panel's decision is entitled to "great deference," Duferco Intern. Steel. v. T. Klaveness Shipping, 333 F.3d 383, 388 (2d Cir. 2003), an award may be vacated where arbitrators exceed their powers or act in manifest disregard of the law. Id. and n.1. An arbitration panel exceeds its power when it issues an award arising from claims concerning a security which is the subject of a class action settlement, bar order, and releases. See In re VMS Securities Litig., 21 F.3d 139, 145 (7th

6

Cir. 1994).  In such circumstances, there is "nothing left for the arbitration panel to decide.  To go ahead and 'decide' the matter anyway [is] ill-advised and clearly beyond any power" the arbitrators have.  Id.

The burden of showing that arbitrators exceeded their authority or acted in manifest disregard of the law falls on the party challenging an arbitral award.  Wall Street Associates, L.P. v. Becker Paribas Inc., 27 F.3d 845, 849 (2d Cir. 1994).  Arbitrators are not required to explain the rationale for an award, and an arbitral panel's decision will be confirmed if there is even a "barely colorable justification for the outcome reached."  Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004) (citation omitted).  The party challenging the award "must show that no proper basis for the award can be inferred from the facts of the case."  Wall Street Associates, 27 F.3d at 849.  Only when a party has presented evidence which permits a court to "conclusively infer" that the panel exceeded its authority, may the award be vacated.  Id.

Salomon, Elias and Spartis have carried their burden of showing that the award to the Riches must be vacated.  They have presented conclusive evidence that the award was for the Riches' trading losses in WorldCom securities, and only for those losses.  All of the arbitration proceedings focused on the advice given by Spartis and Elias to Ms. Rich regarding her WorldCom stock options, specifically, the advice that she exercise them and then hold the stock.  That was the focus of the claim, the evidence at the hearing, and the summation arguments by counsel.  The award's

7

own description of the claims focused exclusively on WorldCom and described no other stock.

There is certainly no basis to find that the award was intended to compensate the Riches for losses in every security except WorldCom. While as a theoretical matter, the losses sustained by the Riches were large enough to permit the award of $315,000 to be attributed to non-WorldCom losses, it would do violence to the arbitration record to conclude that the Riches prevailed at the hearing by winning an award on all of their stock losses except for their trading in WorldCom securities.

The Riches have presented no basis to permit any allocation of the award to non-WorldCom losses. As the arbitrators recognized, they had it within their power to issue two awards, one that included WorldCom trading losses, and one that did not. Their decision to issue just one award, and to decline to clarify the award when they were informed that the Riches could not recover through the arbitration on their WorldCom trading losses, is further evidence that the entirety of the award was for the WorldCom trading losses. In sum, the award of damages to the Riches must be vacated on the ground that the arbitrators exceeded their authority when they granted damages to the Riches based on their WorldCom trading losses.

The arbitration respondents dispute whether that portion of the award that dismissed the Elias/Spartis cross-claims against Salomon can stand in the event that the award of damages to the Riches is vacated. The dismissal should stand. The arbitrators had jurisdiction to consider the Riches' claim. Indeed, had the

8

Riches opted out of the WorldCom class action, the parties have not pointed to any ground for disturbing the panel's award. Moreover, had the panel chosen to award damages for both WorldCom and other trading losses, only that portion of the award directed to the WorldCom damages would be vacated. Given the strong presumption of regularity to which an arbitration award is entitled, Spartis and Elias have not shown that the panel lacked authority to issue an award and that the dismissal of their cross-claim should be vacated.

Conclusion

For the foregoing reasons, the arbitration panel's decision to award damages to the Riches is vacated and the panel's decision to dismiss the cross-claims against Salomon is confirmed.

SO ORDERED:

Dated: New York, New York
March 21, 2006

DENISE COTE
United States District Judge